1 /THOMAS F. DALEY, Judge.
In this civñ suit, the plaintiff/appellant, Innovare Logistics, L.L.C. (Innovare) argues that the trial court erred in granting the Motion for Summary Judgment filed by defendant/appellee, Parish National Bank.
Innovare raises two Assignments of Error. First, Innovare argues that there were genuine issues of material fact making summary judgment inappropriate. Second, Innovare argues that the aforementioned Motion for Summary Judgment was flawed, because it did not set forth the essential legal elements and the material facts, which were not in dispute.
On September 10, 1999, Innovare Logistics, L.L.C. entered into a Limited Liability Company Deposit Agreement with Parish National Bank (the Bank) with authorized representatives of Innovare, Mark Addy, President, and Jill Addy, Secretary/Treasurer. The Bank agreement applied to “any and all present and future deposit accounts, certificates of deposit and other deposit relationships” by Innovare. The unrestricted authority held by the authorized representatives of Innovare included among other things the right “to withdraw funds from |3[Innovare] aecount(s) by written order or request,” and the right “to sign checks, drafts, instruments, and/or other orders for the payment of money from said accounts).” So long as the Bank agreement was in effect Innovare agreed that it:
[would] not without the prior written notice to and without having first obtained the prior written consent of [the] Bank, ... amend its Articles of Organization or Operating Agreement to ... withdraw [the] authority of or to limit or restrict the authoi’ity of [the] Company’s Authorized Representatives (or of Company’s Managers) to deal and contract with [the] Bank or to act pursuant to this Agreement.
No alteration of or amendment to the agreement was to be effective unless given in writing and signed by the party charged or bound by the alteration or amendment. In addition, the Bank could:
continue to deal and contract with such Authorized Representatives (and Company Managers) on an unrestricted basis until such time as: (1) their authority to act for and on behalf on [Innovare] is formally revoked and substitute Authorized Representatives (or Managers) are properly appointed; and (2)[the] Bank is properly notified in writing and accepts and acknowledges the same.
On September 13, 1999, Mark Steven Addy and Jill Johnson Addy entered into an operating agreement forming Innovare Logistics, L.L.C., a limited liability company, in which they were the sole members and first managers. Mark and Jill Addy each held five hundred registered units of Innovare’s one thousand units, which gave them each a 50% interest in the corporation. Section Four, subsection one of the agreement vested in the members all powers of the organization and the right to manage the business and affairs of the organization. Section Four, subsection two required that votes on necessary matters be taken at membership meetings where there was a quorum of a majority of units present, and that all decisions be voted upon by eighty percent of the membership present at the meeting.
On December 5, 2001, Mark Addy acted alone signing a resolution removing Jill Addy as a manager of Innovare and directing all banks and other |4financial institutions to remove Jill Addy as an authorized signatory on all accounts involving Inno-vare. On April 29, 2002, Mark Addy submitted a “Limited Liability Company Au *645 thorization Resolution” to the Bank listing Robert W. Marks and himself as the only members of Innovare and the only agent signatories on Innovare’s new account (henceforth to be known as the “second Innovare account”). On August 26, 2002, Jill Addy wrote the Bank advising it that Mark Addy did not have the authority to remove her as a member or manager of Innovare. In a separate letter on the same date, Jill Addy authorized the Bank to remove funds from the second Innovare account to bring a personal loan taken out in the name of Mark and Jill Addy current, and to apply any remaining balance in the Innovare account to the principal balance of their personal loan.
On September 27, 2002, Innovare filed a Petition for Damages against the Bank alleging that (1) without notice to the new members of Innovare and signatories on the second account, Mark Addy and Robert W. Marks, the Bank allowed Jill Addy to withdraw $18,540.86 from the second Innovare account and use it to pay a mortgage loan balance on the Addys’ personal loan[1]; and (2) the Bank acted in bad faith in returning numerous checks N.F.S. written by Innovare prior to its notice of the unauthorized withdrawal causing the company damage to its business reputation and additional financial losses.
In its First Supplemental and Amending Petition, Innovare alleged that the Bank, (1) allowed Jill Addy to apply $30,074.65, withdrawn from both Innovare accounts, towards a mortgage loan balance on the Addys’ personal loan; (2) allowed Jill Addy to cash out a ten thousand dollar Certificate of Deposit used by Innovare to secure a letter of credit issued by the Bank to Innovare’s bonding ¡¡¡company;[2] and (3) distributed the funds withdrawn by Jill Addy in contravention of LSA-R.S. 12:1327 and LSA-R.S. 9:2280.
On July 21, 2003, the Bank filed a Motion for Summary Judgment alleging that there were no genuine issues of material fact. The Bank argued that they had followed the instructions of signatory, Jill Addy, in accordance with Innovare’s Limited Liability Company Deposit Agreement. Subsequent to the filing of the Motion for Summary Judgment and before the trial court’s ruling, on August 7, 2003, Jill Addy filed a Reconventional and Third Party Demand alleging that Innovare and Mark Addy breached their fiduciary duty in failing to protect and properly account for the company’s assets, and in converting the company’s assets for personal gain. ,0n October 2, 2003, the trial court granted the Bank’s Motion for Summary Judgment. The trial court found that the Bank had merely followed the instructions of Jill Addy, an authorized representative of In-novare, and that there was no agreement between the Bank and Mark Addy requiring the Bank to notify him of withdrawals or transfers.
In this litigation, Innovare argues that there were genuine issues of material fact making summary judgment inappropriate. Specifically, Innovare claims that there are genuine issues of material fact regarding whether the Bank breached its duty of good faith and fair dealings and its duty under LSA-R.S. 12 § 1327(A)(1) and (3)[3] *646 causing Innovare substantial financial loss and damages; whether the Bank made an unauthorized donation from Innovare for payment of the Addys’ personal loan, which inured primarily to the Bank’s benefit; and what authority the Limited Liability Company Deposit Agreement granted to the Bank. In addition, Innovare | r,argues that the Bank’s Motion for Summary Judgment failed to comply with Rule 9.10 of the district court rules requiring that motions for summary judgment set forth the essential legal elements and the material facts, which are not in dispute.
A motion for summary judgment “is designed to secure the just, speedy, and inexpensive determination of every action.” LSA-C.C.P. art. 966. A Motion for Summary Judgment should be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” Id.
Appellate courts review summary judgments de novo, using the same criteria applied by the trial court in order to determine whether the summary judgment was appropriate. Duhe v. Weber’s IGA Store, 01-383, p. 3 (La.App. 5 Cir. 10/17/01), 800 So.2d 1002, 1004. An appellate court must determine whether there is any genuine issue of material fact, and whether the mover/appellant is entitled to judgment as a matter of law. The mover must meet his burden of proof in making a prima facie case showing that his Motion for Summary Judgment should be granted. Id. The mover is not required to negate all essential elements of the adverse party’s claim, action, or defense, but, rather show that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Id. The burden shifts to the adverse party to present evidence demonstrating that material factual issues remain, after the mover has made his a prima facie case. Id. There is no genuine issue of material fact, if the adverse party fails to produce factual support necessary to prove that he will be able to satisfy his evidentiary burden of proof at trial. Id.
In this case, the Bank proved that the Limited Liability Company Deposit Agreement clearly allowed Jill Addy, an authorized representative of Innovare, the unrestricted authority/right “to withdraw funds from [Innovare] account(s) by [7written order or request,” and the right “to sign checks, drafts, instruments, and/or other orders for the payment of money from said aceount(s).” In addition, Innovare agreed that it would not, without the prior written notice and written consent of the Bank, withdraw, limit, or restrict the authority of Innovare’s authorized representatives or company managers to deal and contract with the Bank or to act pursuant to the agreement. Therefore, as the agreement states the Bank could deal and contract with Innovare’s authorized representatives and company managers on an unrestricted basis until their authority to act on Inno-vare’s behalf was formally revoked and substitute authorized representatives or managers were properly appointed, and the Bank was properly notified and accepted in writing.
The Bank asserts and Innovare produces no countervailing evidence that Jill Addy’s authority to act on an unrestricted basis never was formally and properly revoked and substituted by a properly ap *647 pointed authorized representative or manager. It is not factually disputed that Mark Addy attempted to remove Jill Addy as an authorized representative and manager of Innovare in contravention of the Innovare’s operating agreement. Inno-vare’s operating agreement required that votes on necessary matters be taken at membership meetings where there was a quorum of a majority of units present, and that all decisions be voted upon by eighty percent of the membership present at the meeting. Mark Addy held only five hundred registered units of Innovare’s one thousand units. Therefore, he did not have the necessary quorum of a majority of units to hold the membership meeting at which he attempted to remove Jill Addy as an authorized representative and manager of Innovare. Since, Jill Addy was not properly removed as an authorized representative and manager of Innovare pursuant to its operating agreement, she retained all powers of the organization and the right to manage the business and affairs of the organization vested by the original operating agreement. | ¡¡Likewise, Jill Addy retained the unrestricted authority under the Limited Liability Company Deposit Agreement with Parish National Bank to withdraw funds from Innovare’s accounts by written order or request and to sign checks, drafts, instruments, and/or other orders for the payment of money from any and all present and future deposit accounts, certificates of deposit and other deposit relationships of Innovare. As a consequence, the Bank acted within the limit and scope of the Limited Liability Company Deposit Agreement it originally entered into with Innovare.
Innovare mistakenly relies on LSA-R.S. 12:1327[4] and LSA-R.S. 9:2280 arguing that the Bank violated these statutes. LSA-R.S. 12:1327 does not address restrictions on distributions made by the Bank, but rather to the limited liability company and its members. LSA-R.S. 12:1328(A)[5] makes it clear that the members of the limited liability company, in this case, Innovare and its members, not the Bank, are liable for a wrongful distribution made in violation of LSA-12:1327. LSA-12:1328, liability upon wrongful distribution, reads in pertinent part:
Each member ..., who knowingly, or without the exercise of reasonable care and inquiry, votes for or assents to a distribution in violation of the articles of organization, an operating agreement, or R.S. 12:1327 shall be jointly and severally liable to the limited liability company for the amount of the distribution that exceeds the amount that could have been distributed without violating R.S. 12:1327, the articles of organization, or an operating agreement. Each member shall be liable to the limited liability company for the amount which the member received in violation of this Section.
Innovare also mistakenly relies on LSA-R.S. 9:2280, which allows a corporation to make donations to any corporation, trust, fund or foundation created or organized in the United States, which is organized and operated exclusively for religious, charitable, or educational purposes. As stated previously, Jill Addy, not the Bank, initiated the transfer of funds to make a payment on the Addys’ personal mortgage | Joan, not to make a donation to a charitable organization. Since the operating agreement between the Bank and Inno-vare authorized Jill Addy to make these transfers the Bank is not obligated to In- *648 novare for making the transfer. The legal dispute here is between Jill Addy and Mark Addy and not between the Bank and Innovare.
Next, Innovare argues that the Bank’s Motion for Summary Judgment should have been denied, because the motion failed to set forth the essential legal elements relied upon and failure to set forth the material facts that were not in dispute. As stated earlier, the Bank provided a prima facie case by showing that it was authorized to make the transfers. In turn, Innovare failed to present evidence demonstrating that the Bank breached a duty owed Innovare. The Bank proved that by written contract between the Bank and Innovare, Innovare authorized the Bank to allow Jill Addy to transfer funds. No evidence was submitted by Innovare challenging this fact. Therefore, appellant’s Assignments of Error are deemed to be without merit.
For the foregoing reasons, we affirm the trial court’s judgment granting the defendant/appellee’s Motion for Summary Judgment and assess costs of appeal to appellant.

AFFIRMED.

. Innovare was not a guarantor of the Addys’ personal loan nor had Innovare pledged to secure the repayment of the loan.

. Innovare claims that when the certificate of deposit was cashed out the bonding company cancelled its bond, and it was put out of business for two weeks until it secured another bonding company.

.LSA-R.S. 12 § 1327(A) states in pertinent part that:
No distribution shall be made if, after giving effect to the distribution: (1) The limit *646 ed liability company would not be able to pay its debts as they become due in the usual course of business ... [and] (3) The authorization or payment thereof would be conlrary to any restrictions contained in the articles of organization or a written operating agreement.

. LSA-R.S. 12:1327 was enacted by Act number 780, in the 1992 Regular Legislative Session.

. LSA-R.S. 12:1328 was enacted by Act number 475, in the 1993 Regular Legislative Session.